IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NORTHERN NATURAL GAS COMPANY,

Plaintiff,

vs.   Case No. 04-1295-JTM

NASH OIL & GAS, INC.,

Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on the defendant's Motion to Dismiss (Dkt. No. 14). Defendant raises two arguments in support of its motion: 1) that defendant's wells are not "adjoining" under Kan. Stat. Ann. § 55-1210(c), the specific provision which authorizes injunctive relief; and 2) that plaintiff's representation that its storage facilities did not have leaks should prevent plaintiff from claiming rights under Kan. Stat. Ann. § 55-1210(c). Plaintiff responds that defendant's statutory construction is flawed and that the legislature intended to protect an injector's property interest in stored gas.

The court has already decided plaintiff's "Application for an Order Allowing Tests to be Conducted on the Defendant's Wells" (Dkt. No. 5). After a two-day hearing, the court denied plaintiff's application because under Kan. Stat. Ann. § 55-1210(c) the wells in question did not adjoin plaintiff's storage facility. Defendant's Motion to Dismiss turns on a similar question of statutory construction. For the reasons set forth herein, the court grants defendant's Motion to

Dismiss.

**I. NATURE OF THE CASE**

Plaintiff Northern Natural Gas Company (hereafter "Northern") is a natural gas company engaged in the storage and transportation of natural gas. Plaintiff operates a gas storage field known as the Cunningham storage field, a series of wells that have been converted to use as an underground gas storage field and is around five to six miles wide. Defendant Nash Oil & Gas, Inc. (hereafter "Nash") is the owner and operator of natural gas wells located in Pratt County, Kansas. Defendant Nash is licensed as an oil and gas operator by the Kansas Corporation Commission (hereafter "KCC"). Defendant Nash operates the Vernon #1, Holland #1-26, Young #1-26 and J.C. #1 wells, which are located approximately four miles north of the boundaries of Northern's storage facility.

In 1977, Northern applied to the KCC for a certificate that the Viola formation, located in the Cunningham field in Pratt and Kingman Counties, Kansas, was suitable for gas storage. KCC issued the certificate in July 1977. In its order, the KCC determined that the Viola formation was suitable for underground storage purposes and that the use of the formation for gas storage was in the public interest.

In September 1993, Northern began a study of the Cunningham storage facility. Prior studies indicated that storage gas injected by Northern into the Viola formation had migrated and collected in the deeper Simpson formation. Northern prepared and filed an application with the KCC on May 10, 1994, seeking certification of the Simpson formation as suitable for the underground storage of natural gas. On March 22, 1996, the KCC issued an order determining that the Simpson formation was suitable for underground storage of natural gas and that the use

of the formation for gas storage was in the public interest.

To secure certification of the Simpson formation, Northern had conducted extensive evaluation of the capacity of both the Viola and Simpson formations, including geologic and engineering studies. These studies raised Northern's concern that gas had migrated through a geological pathway in the Viola formation and towards defendant's wells.

Defendant notes that on January 29, 2003, Northern filed an "Application for Provisional Operating Permit" for the Cunningham storage facility with KCC. In it, plaintiff represented that it had no unrepaired casing leaks in the facility and represented the storage field's mechanical integrity.

On September 3, 2004, plaintiff filed this action alleging that defendant was producing gas that had migrated from plaintiff's storage facility. In its complaint, Northern alleges conversion, unjust enrichment, and violation of Kan. Stat. Ann. § 55-1210. Northern alleges that it has collected samples of natural gas from the Nash wells and also conducted reservoir studies of the storage field and the area adjacent to the Nash wells that demonstrate that the gas produced by the Nash wells was storage gas that Northern injected.

Plaintiff filed an Application to Inspect Defendant's Wells on September 29, 2004, on which the court held a two-day evidentiary hearing on December 16, 2004, and April 15, 2005. Both sides presented expert testimony on gas migration. After reviewing the parties' arguments, the court denied plaintiff's application on the grounds that defendant's wells were not adjoining. The court will now address defendant's Motion to Dismiss.

## II. STANDARD

### A. Motion to Dismiss under 12(b)(6)

"A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling [him] to relief under [his] theory of recovery." Poole v. County of Otero, 271 F.3d 955, 957 (10th Cir. 2001) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The court must accept all the well-pled allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Boyd v. Runyon, No. 94-1557-JTM, 1996 WL 294330, at *1 (D. Kan. May 23, 1996) (citing Williams v. Meese, 926 F.2d 994 (10th Cir. 1991)). "The [c]ourt, however, need not accept as true those allegations that are conclusory in nature, i.e., which state legal conclusions rather than factual assertions." Fugate v. Unified Gov't of Wyandotte, 161 F. Supp. 2d 1261, 1263 (D. Kan. 2001) (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

### B. Kan. Stat. Ann. § 55-1210

Kan. Stat. Ann. § 55-1210 provides in relevant part:

(a) All natural gas which has previously been reduced to possession, and which is subsequently injected into underground storage fields, sands, reservoirs and facilities, whether such storage rights were acquired by eminent domain or otherwise, shall at all times be the property of the injector, such injector's heirs, successors or assigns, whether owned by the injector or stored under contract.
...
(c) With regard to natural gas that has migrated to adjoining property or to a stratum, or portion thereof, which has not been condemned as allowed by law or otherwise purchased:

> (1) The injector, such injector's heirs, successors and assigns **shall not lose title to or possession of such gas if such injector, such injector's heirs, successors or assigns can prove by a preponderance of the evidence that such gas was originally injected into the underground storage.**

> (2) The injector, such injector's heirs, successors and assigns, **shall have the right to conduct such tests** <u>on any existing wells on adjoining property</u>, at such injector's sole risk and expense including, but not limited to, the value of any lost production of other than the injector's gas, as may be reasonable to determine ownership of such gas.

Kan. Stat. Ann. § 55-1210 (emphasis added).  In <u>Williams Natural Gas Co. v. Supra Energy, Inc.</u>, 261 Kan. 624, 931 P.2d 7 (1997), the Kansas Supreme Court defined "adjoining."  Affirming a trial court definition, the court found adjoining means "any section that was 'adjacent' " or "which touched a section containing a storage field."  <u>Id.</u> at 630, 931 P.2d at 14.  The term retains its "usual and ordinary meaning, that of being contiguous and touching."  <u>Id.</u> at 630, 931 P.2d at 14 (citing <u>State, ex rel., v. Bunton</u>, 141 Kan. 103, Syl. 1, 40 P.2d 326 (1935)).  The court pointed out that the statute was written in terms of "adjoining land" rather than "adjoining leases," thus resting the ability to conduct tests on ownership rather than tenancy.  <u>Id.</u> at 627, 931 P.2d at 12.  In <u>Williams</u>, the court concluded that defendant's wells, located in three different sections of land that were about 0.6 miles from the storage facility, were adjoining.  <u>Id.</u> at 630, 931 P.2d at 14.  "Clearly, a person exercising common sense would understand the term 'adjoining' in this statute."  <u>Id.</u> at 630, 931 P.2d at 14.  In so reasoning, the Kansas Supreme Court upheld the trial court's grant of a temporary restraining order to conduct tests on the wells located adjacent to Williams' storage field.  <u>Id.</u> at 627, 931 P.2d at 12.

**IV. ANALYSIS**

Defendant raises the central issue of whether its wells should be considered adjoining within the meaning of the Kan. Stat. Ann. § 55-1210.  Examining this argument requires balancing the legislative objectives identified in the statute.  Clearly, Kan. Stat. Ann. § 55-

1210(a) explicitly confers title as well as other rights to the injector of stored gas. The legislation was a clear attempt to support the development of stored gas facilities and encourage conservation. Kan. Stat. Ann. § 55-1202; Williams, 261 Kan. at 630, 931 P.2d at 13. While the grant of title under § 55-1210(a) appears absolute, it must meet the additional requirements of § 55-1210(c) if it is for title to gas that has migrated to adjoining property. As defendant correctly points out, the injector may maintain title to migrated gas conditionally – if the injector can prove by the preponderance of evidence that the gas was originally stored. Thus, in interpreting the statute, the court must balance the legislature's intent to both protect the development of the gas storage industry as well as to limit those who may be subject to injunctions.

In its complaint, Northern titled Count III as being brought under "K.S.A. § 55-1210" but then specifies that its action is brought under § 55-1210(c)(1). Dkt. No. 1, at 4. The court first examines the specific provision identified. Under § 55-1210(c), an injector retains title to migrated gas if: 1) the gas migrated to adjoining property or stratum; and 2) the produced gas was originally injected into stored facilities, which the injector must prove by the preponderance of evidence. A pre-requisite to seeking injunctive relief is that the gas must have migrated to "adjoining property." Based on the evidence presented at the hearing, Nash's wells do not meet the definition of "adjoining property." A distance of four to five miles from the edge of the storage facility is too far to meet the common sense definition of "adjoining." As defendant pointed out during the hearing, there are several landowners in the distance between Nash's wells and the plaintiff's storage facilities. Under either an ownership or tenancy construction of "adjoining," Nash's wells do not touch a section containing the storage field nor are they adjacent

or contiguous to the storage field.  See Kan. Stat. Ann. § 55-1210(c).  Plaintiff seems to acknowledge as much since it alternatively frames its rights in terms of title to the stored gas.  See Dkt. No. 20, at 6.

Based on Williams and § 55-1210(c), the legislature intended to limit tests to "adjoining property."  Consequently, an injector is prevented from seeking injunctions on far flung defendants who would not have notice of plaintiff's storage activities and any resultant migration of stored gas.  Clearly, a property owner of adjoining land is much more likely to be aware of her neighbor's business.  The statute helps prevent such a property owner's nefarious or inadvertent action that would deprive an injector of her property.  The legislator granted the injector a statutory remedy against defendants occupying adjoining property to prevent such a loss of title to stored gas.

While an injector may not have a statutory right to conduct tests on property that is not adjoining, an injector should be allowed some equitable remedy.  Otherwise, an injector's title to stored gas as described in § 55-1210(a) would be rendered meaningless, and companies like Northern would be discouraged from entering this industry.  Such a result would seem contrary to the legislature's interest in gas conservation.  See Kan. Stat. Ann. § 55-1202.  In acknowledgment of these goals, the court notes that plaintiff's common law claims of conversion and unjust enrichment remain available in relation to its statutory title to its gas as set forth in § 55-1210(a).  But since Count III, though labeled "K.S.A. § 55-1210," only specified injunctive relief under § 55-1210(c)(1), the court finds it appropriate to dismiss the whole of Count III based on the court's interpretation of "adjoining property."  To be clear, the court does not intend

this dismissal to affect plaintiff's claim of title to gas as it may relate to plaintiff's action for conversion and unjust enrichment. Northern is still free to pursue its other claims based on its other theories of recovery.

IT IS ACCORDINGLY ORDERED this 16th day of May, 2005, that the court grants defendant's Motion to Dismiss as set forth herein (Dkt. No. 14).

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE